**FILED**

JUN 3 0 2009

U.S. DISTRICT COURT
BAY CITY, MICHIGAN

UNITED STATES DISTRICT COURT

2           EASTERN DISTRICT OF MICHIGAN, NORTHERN DIVISION

3    UNITED STATES OF AMERICA,

4                  Plaintiff,                    NO.  08-20060

5    v                                           SENTENCING

6    JAMES ALLEN MOORE,

7                  Defendant.

8    _____/

9                  Proceedings had in the above entitled matter

10   before the Honorable Thomas L. Ludington, United States

11   District Judge, at Bay City, Michigan, on the 26th day of

12   August, 2008.

13                  APPEARANCES:

14                  TERRENCE BERG, UNITED STATES ATTORNEY

15                  BY:  BARBARA TANASE, AUSA,

16                  Appearing on behalf of the Government.

17                  JOAN E. MORGAN, ESQ,

18                  Appearing on behalf of the Defendant.

19

20

21

22

23

24

25

                                                              1

1                    (Case called)

2                    MS. TANASE:  Good afternoon, your Honor,

3     Barbara Tanase on behalf of the United States.

4                    MS. MORGAN:  May it please the court, Joan

5     Morgan, I'm here on behalf of James Moore who's next to me.

6                    THE COURT:  Good afternoon, Ms. Morgan, and

7     good afternoon Mr. Moore.

8                    We are assembled for a sentencing hearing

9     for Mr. Moore.  My records would reflect the fact that we

10    have accepted a guilty plea from the defendant to two

11    counts on May 15 of this past year.  They were the offense

12    of distribution of five grams or more of cocaine base; and

13    count 2, the offense of distribution of 50 grams or more of

14    cocaine base.

15                   Count 1 carries specific sentencing

16    implications.  The court is obligated, with the exception

17    of certain circumstances, to impose a sentence with respect

18    to count 1 of no less than five years and no greater than

19    four years of custody.

20                   The court must impose a term of at least

21    four years supervised release and is authorized to impose a

22    fine of up to $2 million.

23                   Count 2 carries similar implication with the

24    exception of certain circumstances, there's a mandatory

25    minimum of ten years up to life in custody.  The statute

                                                              2

1  provides for at least five years of supervised release and

2  authorizes the court to impose a fine of up to $4 million.

3             Mr. Wright prepared a presentence report.

4  It has been furnished to counsel, indeed, I've had a chance

5  to spend a little bit of time with a number of the issues

6  that had been raised by counsel in chambers.

7             But let's begin, Ms. Morgan, do we have any

8  additions or corrections to the report independent of

9  discussion we had concerning the guideline sentencing

10  issues?

11             MS. MORGAN:  We don't.  Thank you.

12             THE COURT:  You have filed a sentencing

13  memorandum, objections were also noted to the report itself

14  with respect to the relevant questions.

15             We have spent sometime on the law as it

16  would govern the circumstances surrounding the weapon that

17  would have been identified on the date of the search of the

18  defendant's residence, which would have been approximately

19  four months after the transactions, that was the basis for

20  the conviction and to which he had entered his plea.

21             Located at the time were trace elements of

22  cocaine base, but no dispositive quantities.  On the other

23  hand, there was evidence of trafficking, including evidence

24  of the fact of scales and related sorts of materials as I

25  recall.

3

1          We are left with two questions.  The first

2  is the gentleman's eligibility for relief under the safety

3  valve, and the question of whether or not he can prove by a

4  preponderance of the evidence that he did not possess a

5  firearm in connection with the offense, on one hand.

6          And on the other, whether or not he must

7  receive two points in addition to his base level offense

8  under 2D1B1 because the defendant possessed a firearm

9  during the commission of a drug trafficking offense.

10          As we have talked about, he must prove his

11  eligibility under the safety valve by a preponderance of

12  the evidence.  Under the application notes for 2D1, the

13  government maintains the threshold obligation to

14  demonstrate by a preponderance of the evidence the

15  defendant possessed the firearm.

16          The defendant may rebut the presumption

17  only, however, by demonstrating that it is clearly

18  improbable that the firearm was connected to the offense.

19          Counsel and I have spent sometime reviewing

20  the facts, reviewing the law as well as some of the case

21  authority that would apply and I'd like to at least take up

22  counsel's arguments as they may apply.

23          Ms. Morgan, would you like to lead?  You

24  made the objections and we have the memorandum.

25          MS. MORGAN:  Yes, sir, I would.  Thank you.

1    I'd like to indicate that my argument is essentially as

2    follows  That on two occasions in October 2007, the

3    government through an informant purchased cocaine base from

4    Mr. Moore.  Both of those sales occurred at his places of

5    employment.  One was at ABC Warehouse and the other one was

6    at a store owned by his mother, a clothing store in

7    Saginaw.

8                    And both of those events were videotaped by

9    the government.  There is nothing in any of the reports or

10   the videotape or the audio portion of that recording which

11   indicates anything relating to a weapon, either the rifle

12   that was found under the bed at the Maplewood address in

13   Saginaw or any other weapon.

14                   So the facts show that there is no evidence

15   that a weapon was present or possessed in the October 2007

16   sale from Mr. Moore to the informant.

17                   Four months later when the government

18   executed its search warrants at the Maplewood address and

19   many other locations, they were all executed relatively

20   simultaneously, a loaded rifle in a case was located under

21   Mr. Moore's bed in his bedroom.

22                   My argument is that it is clearly improbable

23   that that gun was used during the October 2007 offenses.  I

24   acknowledge that items were seized from the kitchen of that

25   house which indicates that at some point in time, it

5

1    appears that there was packaging of cocaine base, but,

2    again, the issue here is that there's nothing to show any

3    temporal proximity between those packaging materials and

4    the weapon that was found under his bed.

5                    I indicated to the court in chambers that

6    were Mr. Moore to testify, he would testify that rifle was

7    under his bed because he had four or five occasions where

8    that house had been broken into which resulted in him

9    having an alarm system put into the house.

10                   And when the agents executed the search

11   warrant on February 20, as when people broke in before

12   February 20 during the year or so that he had been renting

13   that house, Mr. Moore drove over to the Maplewood house; he

14   had not stayed there the night before.  He was detained and

15   readily admitted that the gun was his.

16                   He also indicated to the agents that he had

17   not been in or lived in that house for several months.  The

18   identification that was taken from him showed that he lived

19   at his mother's home on North Michigan Avenue in Saginaw,

20   and he had been renting that house for, again,

21   approximately a year, living there at various times.

22                   But I think the facts of this case clearly

23   meet the threshold for the safety valve, and, in addition

24   to that, although the case law, I think, sets a high bar,

25   it also shows that it is clearly improbable that the gun

1   was used during the offense based, in large part, on my

2   argument that there is no temporal proximity between the

3   events of October 2007 and the execution of the search

4   warrant.

5           But also the other facts: The type of gun

6   which, in this case, was a rifle -- I'm sorry, it was a

7   shotgun -- is not the typical weapon that is used during a

8   drug trafficking offense.  It was legally owned by Mr.

9   Moore.  He had a legitimate explanation for it and that is

10  that it was based on his need for home protection because

11  the house had been broken into on so many occasions during

12  the previous year after it had been burgled.

13          So based on all of that, I would ask the

14  court to, number one, not add the two point enhancement for

15  the gun and, in addition, find that Mr. Moore is eligible

16  for the safety valve two point reduction.

17          THE COURT:  Indeed, excusing the statutory

18  minimum?

19          MS. MORGAN:  Yes.

20          THE COURT:  Ms. Tanase, does the government

21  have anything?

22          MS. TANASE:  Yes, your Honor, I'd like to

23  start by discussing the specific offense characteristic in

24  2D1.1B1.  Under the guideline D1.3, the court is to

25  consider all relevant conduct in determining whether or not

                                                        7

1 a specific offense characteristic should be applied, and

2 that includes all conduct that is part of a same course of

3 conduct or common scheme or plan as the offense of

4 conviction.

5         So in this case, your Honor, I would submit

6 that the fact that when the police executed a search

7 warrant at Mr. Moore's home on Maplewood, they found

8 evidence of drug trafficking activity, that is wrappers

9 containing residue, scales containing cocaine residue,

10 cutting agents, razors that would be used to cut up and

11 package crack cocaine as well as finding similar items at

12 his place of business, that is Inositol which is used to

13 cut cocaine -- excuse me -- manufacture crack cocaine as

14 well as other items that would be used to package cocaine.

15         That's part of the same course of conduct

16 for which Mr. Moore has pled guilty, therefore, whatever is

17 found in connection with those activities should be

18 considered in whether or not to apply this specific offense

19 characteristic.

20         In this case, 2D1.1 adds two points to the

21 offense level if a dangerous weapon was possessed.  There's

22 no dispute that the house on Maplewood was Mr. Moore's,

23 that his gun was there, that it was loaded, it was a

24 shotgun and indeed it was in close proximity with the drug

25 trafficking items that I discussed earlier.

8

1                Therefore, under application note 3, I
2   believe the government has borne its burden of proving a
3   firearm was present.  That's all we need to prove before
4   the defendant has the burden of showing that it was clearly
5   improbable that it was connected to the offense of drug
6   trafficking.
7                In this case, I know it's a shotgun, Ms.
8   Morgan says it's not the typical type of gun that's carried
9   on a drug sale, and that may be correct.  But it's
10  certainly a loaded shotgun and could be used to protect
11  drugs that were in the home and waiting there to be sold or
12  wherever you're doing, manufacturing and distribution,
13  packaging activity.
14                Therefore, I believe the government has
15  borne its burden of proving that 2D1.1 applies and the
16  defendant has failed to rebut that by showing it's clearly
17  improbable.
18                I do believe the gun probably was there for
19  self protection.  Not only self protection, but also
20  protection of Mr. Moore's drugs.
21                With respect to the safety valve under
22  5C1.2, again, the court should look -- it needs to look to
23  determine whether or not the defendant has proven by a
24  preponderance of the evidence that he did not possess a
25  firearm or other dangerous weapon in connection with the

1   offense.

2             The offense, again, is defined under

3   application note 3 to include all relevant conduct, that is

4   all conduct that is part of the same course of conduct or a

5   common scheme or plan.

6             Once again, the government would submit that

7   evidence of drug trafficking was found both at Mr. Moore's

8   home and his place of business, and that he admits having

9   possessed that firearm and that, therefore, he's unable to

10  show by a preponderance of evidence that -- and the firearm

11  was, in fact, in close proximity to the drug trafficking

12  paraphernalia and residue that was found in his home, it

13  was loaded, it is the type of weapon that would be used to

14  protect those kinds of activities.  And the government

15  believes Mr. Moore has failed to show by a preponderance of

16  evidence that the firearm was not connected to the

17  offenses, that is when we look at the course of conduct.

18             Thank you, your Honor.

19             THE COURT:  Thank you.  I would note that in

20  conjunction with our review of the application of the two

21  variables that have been the subject of our discussion,

22  both the government as well as the defense are satisfied

23  that the relevant factual information is largely

24  uncontested.  There's been no request at this point for an

25  evidentiary hearing.  You would confirm that, correct?

1                    MS. TANASE:   That's correct, your Honor.

2                    MS. MORGAN:   I agree, yes.

3                    THE COURT:   I also agree.  As I think

4    counsel have pointed out in trying to resolve the somewhat

5    unusual set of circumstances, the operative language for

6    the safety valve utilizes the language in connection with

7    the offense, whereas the 2D1 standard addresses the

8    question of commission of a drug trafficking offense,

9    which, indeed, sets up the most unusual set of facts that

10   bring us here today.

11                   The first of which is the two offenses of

12   conviction, drug trafficking offenses, took place some four

13   months in time before the search warrant was executed.   To

14   be sure, the search turned up lots of evidence of drug

15   trafficking as it's outlined in paragraph 19, to be sure,

16   evidence of materials that would have been used to cook the

17   powder cocaine in order to, indeed, manufacture cocaine

18   base.

19                   We found, according to paragraph 19, a

20   mobile telephone, a memory card with a drive along with

21   various paperwork that would support the notion that there

22   were purchasers and sellers, baking soda, a relatively

23   commonly used material for the creation of cocaine base

24   from the powder; the razor blades, plastic trays, along

25   with baggies and lots of other evidence of a distribution

                                                              11

 1  operation if not, indeed, manufacture.

 2              The court's conclusion is that the gentleman

 3  is eligible for the safety valve insofar as, on the basis

 4  of what I would view as the preponderance of evidence, he

 5  did not possess a firearm in connection with the offense.

 6  In part, because of the chronological set of circumstances,

 7  the four month period of time, at a minimum.

 8              I do, however, believe that he is eligible

 9  for the two point addition as a result of the fact, in

10  part, of the burden of proof, the 2D1 standard necessarily

11  means that once the government has met the presumption, the

12  defendant must rebut it by clear -- to demonstrate it is

13  clearly improbable that the firearm was connected to the

14  offense.  Clearly the evidence of the trafficking makes

15  that a difficult burden for the defendant to meet, and I do

16  not believe does meet it on the basis of the uncontested

17  matters of fact.

18              That would leave us, noting the objections

19  of both the government as well as the defense, I believe,

20  with a guideline range of 87 to 108, and I'd like to

21  confirm that with counsel.

22              Are we in agreement, Ms. Tanase?

23              MS. TANASE:  Yes, your Honor.

24              MS. MORGAN:  Yes, thank you.

25              THE COURT:  With that understanding, if you

                                                              12

1    would like to offer any words or elocution on behalf of the

2    defendant, please.

3                    MS. MORGAN:  Yes, that's correct, I would

4    like to.  Mr. Moore recently had his 30th birthday.  And

5    his is a situation of a young man who had and has, I think,

6    potential to do good things and to accomplish good things.

7    He's someone who started using drugs, and as a result sold

8    drugs and went awry.

9                    He, however, does have verifiable events in

10   his life which I think support my contention that a

11   sentence either at the bottom end or even below the

12   guidelines would be more appropriate than one at the top of

13   the guideline range.

14                    I'd indicate, first of all, that he did

15   serve in the United States Army, receiving an honorable

16   discharge.  We provided his armed services records to

17   probation.  They were positive.  They indicated a number of

18   honors that he received and the fact that he was part of

19   the peace keeping forces in both Bosnia and Kosovo.

20                    After that, and I do want to address this

21   because it was upsetting to me when I read it in the

22   presentence report, he worked at a number of security type

23   jobs.  He was a private security guard.  He worked for the

24   juvenile authorities in Kent County then he worked as a

25   corrections officer in the Michigan Department of

                                                              13

1   Corrections.  And although I have in my possession his

2   entire personnel file from the Department of Corrections, I

3   will represent to the court there is nothing in there that

4   indicates anything about any sort of drug investigation or

5   anything which is noted in the presentence report.

6   Apparently someone put that in his file, but this is a man

7   who was employed with a satisfy performance as a

8   corrections officer.

9            And his mother who is present in the

10  courtroom was diagnosed with cancer.  Mr. Moore resigned

11  his position and was never investigated, that he was aware

12  of.  He was never charged.  There was simply no indication

13  of anything relating to a drug investigation which

14  apparently someone communicated to probation.

15           So he wants to make clear that that service

16  to the department of·corrections was done honorably and in

17  a satisfactory manner.

18           He did get married and divorced.  He has a

19  six year old son.  He has had constant communication with

20  his son and has a good relationship with his son as well as

21  with his baby daughter.

22           He has remained employed.  He has attended

23  college and even attended the spring semester while he was

24  doing very well under the supervision of pretrial services.

25  So he is somebody who is able to perform and achieve, in

1   my experience.

2                     Something he has asked me to make a request

3   of the court is relatively unusual, and that is he is

4   asking the court to recommend to the Bureau of Prisons that

5   he be placed in the comprehensive substance abuse program

6   while he is incarcerated, even though he knows that it will

7   not result in a reduction in his sentence because of the

8   firearm.  That's a Bureau of Prisons policy.

9                     Mr. Moore was -- he and I discussed that,

10  and normally when I discuss that with a client, their

11  desire to engage in a substance abuse program disappears

12  when they hear it will not result in a sentence benefit to

13  them.  But that's not true of Mr. Moore, he's still

14  desirous of obtaining substance abuse treatment during his

15  incarceration.

16                    He has also asked the court to recommend to

17  Bureau of Prisons that he be designated to the correctional

18  facility at Yorktown, South Dakota.  So I make that

19  request.

20                    I had difficulty, you know, when the

21  guidelines were mandatory; I have difficulty now when

22  they're only advisory because it's hard for me to ascertain

23  in many of these cases what's the benefit of having someone

24  incarcerated for, in this case, for example, nine years

25  instead of eight years or eight years instead of seven

15

1  years?

2              From my viewpoint, if there is a benefit to

3  the inmate, it is, at best, incremental.  If there is a

4  benefit to society, it's a very expensive benefit in terms

5  of the costs of keeping someone incarcerated versus giving

6  them a chance in society.

7              My plea to the court is that Mr. Moore has

8  shown that he has an ability, I believe, if he's drug free

9  to be a productive member of society and, therefore, I'm

10  asking that you consider sentencing him at the bottom of

11  the guidelines range or perhaps below.  Thank you.

12              THE COURT:  I thank you for your remarks,

13  ma'am.

14              Mr. Moore, is there anything you would like

15  to add to Ms. Morgan's remarks on your behalf?

16              RESPONDENT:  Good afternoon, your Honor.

17  Today's one of the most sullen days of my life.  This Is

18  the beginning of the end to a chapter of my life.  I would

19  like to say, first of all, I apologize to my family for the

20  hurt and embarrassment that I've caused during this time.

21  I accept full responsibility for the crimes that took place

22  in October.

23              I did choose to make bad decisions in my

24  life, and I could have avoided them.  But throughout all

25  this life changing experience, I have learned a lot about

 1  myself.  And when I was serving in the United States Army I

 2  learned a lot of things.  What sticks out in my head the

 3  most is integrity.  I lost my integrity when I began to use

 4  drugs and then sold them to pay for my habit.

 5            I know the federal government is less

 6  lenient on you if you cooperate and give substantial

 7  information on a person or persons, but is that what this

 8  country was built on?  While serving in Bosnia and Kosovo I

 9  took an oath upon entering the U.S. Army; that oath states

10  if I become a prisoner of war I will keep faith with my

11  fellow prisoners.  When questioned, I am required to give

12  name, rank, service number and date of birth.  I will evade

13  answering further questions to the utmost of my ability.

14            I will never forget I'm an American.  I have

15  forfeited freedom.  I'm responsible for my actions and I'm

16  dedicated to the principles which made my country fee.  I

17  trust in God and the United States of America.

18            Upon exiting the military I took this oath

19  with me.  I'm standing before you to say that I should not

20  serve -- I am not standing before you to say that I should

21  not serve time for the offenses that I committed.

22            No, your Honor, I'm asking for a little

23  leniency in sentence.  I know you have read my presentence

24  investigation and report.  I do not have a long criminal

25  records.  I was a positive person within my community and a

                                                        17

1  good father to my two children.

2              Even while on bond, I continued to be

3  productive citizen by attending college and taking a job

4  while on tether and following all the guidelines of my

5  bond.

6              So I'm asking, your Honor, if you could find

7  it in your heart and take all the factors I have named in

8  this statement into consideration in your sentencing me

9  today. And whatever sentence you give me today I will be at

10  ease with it because I do believe God has a plan for me

11  already.

12              THE COURT:  I appreciate your remarks, sir.

13              Ms. Tanase, any remarks on behalf of the

14  government?

15              MS. TANASE:  No, your Honor.  Thank you.

16              THE COURT:  The case has been well argued

17  quite apart from the technical considerations with respect

18  to the weapons.  The gentleman that is present before us, I

19  think, has the capability of living a far different life

20  than he has.  It is my sincere hope that, at the most, the

21  drug trafficking activities that brings him here today are

22  a departure, one that he can correct.  One that we will

23  give him every bit of assistance the Bureau of Prisons has

24  the capacity to address.

25              Quite apart from the sentencing guidelines

1  that we have given some attention to today, the court is

2  aware of and has considered the factors outlined

3  statutorily in Title 18 Section 3553 A in consideration of

4  the sentence.

5            As a result, it is the sentence of the court

6  that the defendant will be committed to the custody of the

7  United States Bureau of Prisons for a term of 87 months on

8  count 1, and 87 months on count 2.  The sentence to be

9  imposed will be served concurrently.

10           We will recommend that the defendant be

11  designated to an institution with a comprehensive drug

12  treatment program.

13           We will recommend to the Bureau of Prisons

14  that the consideration be given to the Yorktown, South

15  Dakota facility, and they will, in each of those two

16  requests, make the decision.

17           A $100 special assessment fee that is

18  statutorily required is ordered to be paid for a total of

19  $200, that is $100 with respect to each of the two counts.

20           While the gentleman is in custody he is to

21  participate in an inmate financial responsibility program.

22  The court will reflect for the record our awareness of the

23  IFRP payment schedules and we order the defendant's

24  compliance with those schedules.

25           We will waive the imposition of fines, costs

19

1    of incarceration and costs of supervision.  Those will be

2    borne by the public due to the defendant's lack of

3    resources.

4              The defendant is to refrain from any

5    unlawful use of a controlled substance.  He shall submit to

6    one drug test within 15 days of his release on supervision

7    and at least two periodic drug tests thereafter as may be

8    directed by his probation officer.

9              Upon his release from custody, he is to be

10   placed on supervised release for a term of five years with

11   respect to count 1 and five years with respect to count 2.

12   Again, each of the sentences to be served concurrently.

13             Within 72 hours of his release from the

14   Bureau of Prisons, the gentleman is to report in person to

15   the probation department in the district where he is

16   released.

17             While he's on supervision, he is to abide by

18   the standard conditions of supervised release that have

19   been established by the United States District Court for

20   the Eastern District of Michigan, and we would also order

21   his compliance with the following additional special

22   conditions:

23             He is to participate in a program approved

24   by the probation department for substance abuse, which may

25   include testing to determine if he's reverted to the use of

1    drugs or alcohol, if that is necessary.

2                    He shall not use or possess alcohol in any

3    consumable form, nor shall he be in the social company of

4    any person that he knows to be in possession of alcohol or

5    illegal drugs, or visibly affected by them.

6                    He shall not be found at anyplace that

7    serves alcohol for consumption on the premises with the

8    exception of restaurants.

9                    He shall not incur any new credit charges or

10   open any additional lines of credit without the approval of

11   his probation officer unless he's in full compliance with

12   his payment schedule.

13                   He shall provide his probation officer

14   access to any requested financial information, and he shall

15   be lawfully and gainfully employed on a full-time basis, or

16   he shall be seeking such lawful gainful employment on a

17   full-time basis.

18                   The full-time will be defined as 35 hours

19   per week.  In the event he has part-time employment, he

20   shall devote the balance of his 35 hours per week to his

21   efforts in seeking additional employment.

22                   Finally, and importantly, he shall establish

23   a plan with the Shiawassee and Saginaw County Friends of

24   the Court to satisfy the child support arrearage with each

25   agency and to abide by the plan so he undertakes and

                                                              21

1   completes his responsibility for his support and care of

2   his children.

3               Any questions or objections to the sentence

4   being imposed by the court, Ms. Morgan?

5               MS. MORGAN:  No.  I do have one additional

6   request, and that is that he be permitted to report to the

7   designated institution.

8               THE COURT:  Does the government have a point

9   of view?

10              MS. TANASE:  Your Honor, I believe by

11  statute Mr. Moore probably should have been taken into

12  custody at the time he entered his guilty plea and so we

13  would oppose self surrender.

14              THE COURT:  I believe the mandatory criteria

15  of Section 3143 applies.  I agree with the government that,

16  indeed, he should have been ordered into custody at the

17  time of his plea.

18              Does the government have any objections or

19  questions concerning the sentence imposed?

20              MS. TANASE:  No, your Honor.  Thank you.

21              THE COURT:  One final point, from the

22  court's perspective, with respect to the gentleman's

23  entitlement to appellate review.  Ms. Morgan, will you be

24  representing the gentleman through the process, getting his

25  application filed if he wishes to request appellate review

```
 1   of the decisions that have been made during the course of
 2   the case?
 3               MS. MORGAN:  Yes, I will.
 4               And to confirm, Mr. Moore, if you wish to
 5   ask to have the Court of Appeals review the decisions we
 6   have made in the case, you need to make sure that those
 7   papers are completed within ten days of today's date.  Ms.
 8   Morgan has indicated she will continue her representation
 9   of you through that process if you choose to do so.  Do you
10   understand that, sir?
11               RESPONDENT:     Yes, your Honor.
12               THE COURT:  Very well.  The gentleman is to
13   surrender to the custody of the marshal.
14               We will also confirm the fact owe Ms. Morgan
15   will represent the gentleman through the commencement of
16   the appellate process.
17               MS. MORGAN:  Judge, can I ask a question
18   about 3143 because I'm just unfamiliar with it?  If there
19   -- I don't know how to ask it -- is there any -- will the
20   court consider any arguments I will make relating to self
21   surrender?
22               THE COURT:  Indeed, I believe it follows
23   from his conviction of the offense.  There's a statutory
24   presumption of --
25               MS. MORGAN:  I understand there's a
```

23

1   presumption.  But I guess what I'm asking, because I have

2   never had this situation where someone who's done so well

3   under pretrial supervision was required to go into custody

4   at sentencing.

5               I had plenty of clients who have faced

6   similar or greater sentences than Mr. Moore is facing.

7   I feel a little neglectful if the statute is mandatory

8   because I certainly would have advised him of that, and I

9   didn't.  I assumed because he has done so well under

10  pretrial supervision that --

11              THE COURT:  Ms. Morgan?

12              MS. MORGAN:  -- he would be able to

13  continue.

14              THE COURT:  Why don't we give you an

15  opportunity to just double check the statute so you can at

16  least give attention to that question as well as to review

17  it with your client.

18              MS. MORGAN:  Okay.

19              THE COURT:  I need to move on to an

20  additional case.

21              Ms. Tanase, are you able to furnish Ms.

22  Morgan with a copy, at least, of the statute?

23              MS. TANASE:  Yes.

24              THE COURT:  And we can proceed to Mr.

25  Hendrick's case.  The court sees Mr. Perry is present.

1               (Recess taken)

2               THE COURT:  Is Ms. Morgan present?

3               MS. MORGAN:  I'm sorry?

4               THE COURT:  I simply am recalling the case.

5    We had earlier provided you an opportunity to at least

6    review the statute.  It is fair to say, as I think you

7    pointed out rather extensively, and with some emphasis,

8    that you are not frequented with the application of the

9    statute regularly in the Southern Division.

10              MS. MORGAN:  Not frequent is incorrect.  It

11   would be correct to say I've never had that statute used to

12   have my client's detention begin at sentencing when they

13   have been fully compliant with pretrial supervision as Mr.

14   Moore has been.

15              And I've practiced in the Southern Division

16   for 24 years now, plus the two years I was a law clerk.  So

17   if there's noncompliance, that's a different issue.  But I

18   simply wanted to express to the court that I had told Mr.

19   Moore that he would have three or four weeks before he was

20   designated and needed to self report.  As a result of that,

21   he put off -- not put off -- but scheduled some medical

22   procedures, including getting his braces removed in about,

23   I think, two weeks based on my information to him that he

24   would not be locked up today.

25              So I feel badly that I misinformed him.

                                                        25

 1                    THE COURT:  Let me indicate that you're not

 2      the first practitioner that I've confronted with the same

 3      issue.

 4                    I presume you would at least agree with us

 5      that upon review of the statutory section that we really

 6      aren't extended any discretion in the matter.

 7                    MS. MORGAN:  It appears that that is a true

 8      statement.

 9                    THE COURT:  Ms. Tanase, is there anything

10      you wish to cover?

11                    MS. TANASE:  Just, your Honor, I always

12      bring this particular statute to the court's attention

13      simply because it is mandatory.  The government has an

14      obligation to enforce the law, not because I have anything

15      against Mr. Moore and him having an opportunity to get his

16      medical problems attended to before surrendering.

17                    THE COURT:  I appreciate that.  Mr. Moore,

18      if you please, make yourself available to the marshals.

19                    RESPONDENT:  Okay.

20                    THE COURT:  Thank you.    The record's

21      closed.

22                    (Proceedings adjourned)

23

24

25

                                                                  26

1

2

3           I, Charlene McLoughlin, United States Court

4   Reporter, do hereby certify that I electronically recorded

5   in shorthand the proceedings had in the above-entitled

6   matter and that the foregoing pages are a full, true and

7   accurate transcription of said proceedings.

8

9

10

11                    s/  Charlene McLoughlin

12                    CHARLENE McLOUGHLIN, CM CP CSR

13                    UNITED STATES COURT REPORTER.

14

15

16

17

18

19

20

21

22

23

24

25