**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

JAMES ALLEN MOORE,

      *Petitioner*,

CRIMINAL CASE NO. 08-CR-20060
CIVIL CASE NO. 09-CV-10998

v.

UNITED STATES OF AMERICA,

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER

      *Respondent*.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE**
(Doc. 21)

**I.   RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **GRANTED IN PART** and that the Petitioner James Allen Moore be resentenced. It is further recommended that Petitioner's Motion for Assignment of Counsel (Doc. 25) be granted for representation at resentencing.

**II.   REPORT**

    **A.   Introduction**

Pending, pursuant to an Order of Reference from United States District Judge Thomas Ludington (Doc. 23), is the above-entitled motion to vacate Petitioner James Allen Moore's federal custodial sentence, which was filed under 28 U.S.C. § 2255. Respondent submitted a response (Doc. 26) and Petitioner Moore (hereafter "Moore") did not file a reply. I conclude that pursuant

to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

**B.     Background**

On February 20, 2008, Moore was charged in a two-count indictment with: (I) distribution of five grams or more of cocaine base under 21 U.S.C. § 841(a)(1) on or about October 22, 2007; and (II) distribution of fifty grams or more of cocaine base under 21 U.S.C. § 841(a)(1) on or about October 31, 2007. Moore pleaded guilty to both counts on May 16, 2008. No Rule 11 plea agreement was filed. Prior to sentencing, Moore's counsel filed a sentencing memorandum on August 13, 2008, arguing: (1) that the firearms enhancement provision of the United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(b)(1) should not be applied; and (2) that the "safety valve" provision found at U.S.S.G. § 5C1.2(a) should be applied. (Doc. 19.)

Specifically, Moore's counsel argued in the sentencing memorandum that "no drugs (only residue) was [sic] found at the Maplewood address, there was no drug activity in this case which occurred there, the residue and items found are not connected to the charged offenses, and the location of the rifle (not a firearm common to drug transactions) in the bedroom was not proximate to the other items." (Doc. 19 at 4.) In addition, Moore's counsel contended that "[t]he shotgun, legally owned by Mr. Moore, was in the house for protection and, as the government acknowledges, the police [h]ad been called on several occasions within the previous yea[r] for burglaries to the premises." (Doc. 19 at 3.)

At the sentencing hearing, which was held on August 26, 2008, the court noted that it had "spent some time on the law as it would govern the circumstances surrounding the weapon that would have been identified on the date of the search of [Moore's] residence, which would have been approximately four months after the transactions, that was the basis for the conviction and

to which he had entered his plea." (Doc. 27 at 3.) The court noted that, as Moore argued, there were only trace quantities (or residue) found at the home, but found that, contrary to Moore's argument, "there was evidence of trafficking, including evidence of scales and related sorts of materials as I recall." (*Id.*) Defense counsel argued that the two sales of cocaine base from Moore to the government's informant in October 2007 occurred at Moore's place of employment rather than his home and that the sales were videotaped and nothing on the videotapes showed anything relating to a weapon. (*Id.* at 5.) Defense counsel stated that the firearm was found loaded, in a case, located under Moore's bed in his bedroom. (*Id.*) Defense counsel "acknowledged that items were seized from the kitchen of that house which indicates [sic] that at some point in time, it appears that there was packaging of cocaine base, but, again, the issue here is that there's nothing to show any temporal proximity between those packaging materials and the weapon that was found under his bed." (*Id.* at 5-6.) Defense counsel proffered that "were [Moore] to testify, he would testify that [the] rifle was under his bed because he had four or five occasions where that house had been broken into which resulted in him having an alarm system put into the house." (*Id.* at 6.)[1] Finally, defense counsel noted that Moore "readily admitted that the gun was his." (*Id.*) Therefore, defense counsel argued that the "safety valve" should be applied to excuse the statutory mandatory minimum. (*Id.* at 7.)

At the sentencing hearing, the government added that not only were packaging materials found at Moore's home, but also "scales containing cocaine residue, cutting agents, razors that would be used to cut up and package crack cocaine as well as finding similar items at his place of business, that is Inositol which is used to cut cocaine – excuse me – manufacture crack cocaine as

---

[1] Counsel corrected herself, indicating that the firearm was actually a shotgun rather than a rifle. (Doc. 27 at 7.) I note that the terms "shotgun" and "rifle" have been used interchangeably in documents in this case as well.

3

well as other items that would be used to package cocaine" and that such items indicated the "same course of conduct for which [Moore] has pled guilty." (*Id.* at 8.) The court added that a "mobile telephone, a memory card with a drive along with various paperwork that would support the notion that there were purchasers and sellers" were also found. (*Id.* at 11.) The government stated that the shotgun is "not the typical type of gun that's carried on a drug sale, and that may be correct [b]ut it's certainly a loaded shotgun and could be used to protect drugs that were in the home and waiting there to be sold . . . ." (*Id.* at 9.) The government argued that "the gun probably was there for self protection[;] [n]ot only self protection, but also protection of [Moore's] drugs." (*Id.*)

The court confirmed with the parties that the facts were uncontested and that there was no request for an evidentiary hearing. (*Id.* at 10-11.) The court then determined that Moore was "eligible for the safety valve insofar as, on the basis of what I would view as the preponderance of evidence, he did not possess a firearm in connection with the offense. In part, because of the chronological set of circumstances, the four month period of time, at a minimum." (*Id.* at 12.) The court further found that Moore was "eligible for the two point addition as a result of the fact, in part, of the burden of proof, the 2D1 standard necessarily means that once the government has met the presumption, the defendant must rebut it by clear – to demonstrate it is clearly improbable that the firearm was connected to the offense. Clearly the evidence of trafficking makes that a difficult burden for the defendant to meet, and I do not believe [he] does meet it on the basis of uncontested matters of fact." (*Id.*) Moore was sentenced to 87 months' imprisonment on each count, with the sentences to run concurrently. (Doc. 20 at 2.)

Moore failed to raise sentencing issues on direct appeal and asserts that his counsel was ineffective because she "failed to challenge the sentencing enhancement for possession of a dangerous weapon in connection with the instant offenses and is actually and factually innocent

4

of the conduct necessary to support the enhancement." (Doc. 21 at 4.) Moore clarifies that he "did not admit the use or the connection of the firearm to the offenses . . . ." (Doc. 21 at 8.) Moore does not claim that he is factually innocent of the criminal offenses for which he was sentenced.

### C.      Governing Law

In order to prevail on a section 2255 motion, a petitioner must show a "fundamental defect which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). A section 2255 motion is not a substitute for a direct appeal. When a petitioner raises a claim that he failed to raise at the appellate level, a court is generally precluded from reviewing the merits of such a claim unless a petitioner can show: (1) cause for his failure to raise the claim earlier in a direct appeal; and (2) actual prejudice stemming from the alleged violation or actual innocence. *Reed v. Farley*, 512 U.S. 339, 354-55, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994); *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1981). A post-conviction motion under section 2255 is the proper vehicle for raising claims of ineffective assistance of counsel in the first instance. *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir. 2002) (citing *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir. 1990)).

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense – not what bears a false label of 'strategy' – based on what investigation reveals witnesses will actually testify to,

not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable affect on the outcome of the proceeding." *Id.* Rather, the movant must show that, but for counsel's errors, the result would have been favorably different. *Id*. at 693. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id*. at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process.

In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted).

    **D.**    **Analysis and Conclusions**

    **1.**    **Ineffective Assistance of Trial Counsel**

An ineffective assistance of counsel claim "may be brought in a collateral proceeding under § 2255 whether or not the Petitioner could have raised the claim on direct appeal." *Massaro v.*

*United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003). Moore contends that his counsel was ineffective because she "failed to challenge the sentencing enhancement for possession of a dangerous weapon in connection with the instant offenses and is actually and factually innocent of the conduct necessary to support the enhancement." (Doc. 21 at 4.)  Moore also contends that counsel failed to discuss the matter or suggest appellate review of the enhancement." (Doc. 21 at 5.)  As indicated earlier, Moore does not claim factual innocence of the facts supporting the conviction.

Respondent first notes that Moore's argument that the sentence was in excess of the plea agreement is inaccurate because there was no plea agreement filed in the instant case. (Doc. 26 at 4.)  Respondent contends that Moore's counsel could not have been ineffective since she filed a pleading and argued at the sentencing hearing that the firearm enhancement should not apply and that the safety valve should apply. (Doc. 26 at 4-6.)

Respondent's representations in this regard, I suggest, are correct. Moore's counsel raised, briefed, and zealously argued that the firearm enhancement should not apply and that Moore was entitled to the to the benefit of the "safety valve" provision. (Docs. 19, 27.)  Counsel was successful in winning the argument as to application of the safety valve, but not with respect to the firearm enhancement. (Doc. 27 at 12.)  I suggest that under these circumstances, counsel could not be considered ineffective at the trial level.

Moore also contends that counsel failed to achieve appellate review of his sentence. However, Moore does not state whether he discussed the matter with counsel, or whether he ever requested that counsel file a notice of appeal. (Doc. 21 at 5.)  The Supreme Court stated in *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that

is professionally unreasonable." *Id.* at 477. The inquiry centers on whether the defendant "consulted" with counsel regarding an appeal and, if not, whether the failure to do so constitutes deficient performance. *Id.* at 478. The Supreme Court has held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. As to the latter duty, the Sixth Circuit has held that a criminal defendant's actual request is a "critical element." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *Regalado v. United States*, 334 F.3d 520, 524-26 (6th Cir. 2003).

In the instant case, there is no record evidence indicating whether Moore requested that counsel file an appeal and, thus, an evidentiary hearing would need to be held to determine the factual circumstances surrounding post-conviction communication between counsel and Moore if the second prong of the duty inquiry applied. However, I suggest that the instant case presents a scenario under the first prong of the duty inquiry where "a rational defendant would want to appeal" because of the meritorious grounds for appeal analyzed below, and thus, that Moore's claim that counsel was ineffective for failing to file a notice of appeal itself provides a ground for section 2255 relief.

### 2. Meritorious Grounds for Appeal

As mentioned, defense counsel unsuccessfully challenged the application of the firearm enhancement under § 2D1.1(b)(1) and successfully argued for application of the safety valve provision of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a). I suggest that, for the reasons discussed below, the court's ruling and express rationale for the ruling required counsel to at least consult with Moore regarding the meritorious grounds for appeal.

As indicated earlier, the court determined that Moore was "eligible for the safety valve insofar as, on the basis of what I would view as the preponderance of evidence, he did not possess a firearm in connection with the offense." (*Id.* at 12.) However, the court also held that Moore was "eligible for the two point addition as a result of the fact, in part, of the burden of proof, the 2D1 standard necessarily means that once the government has met the presumption, the defendant must rebut it by clear – to demonstrate it is clearly improbable that the firearm was connected to the offense. Clearly the evidence of trafficking makes that a difficult burden for the defendant to meet, and I do not believe [he] does meet it on the basis of uncontested matters of fact." (*Id.*)

      **a.    Safety Valve Provision**

Mandatory minimum sentences apply in drug transaction cases unless application of the "safety valve" provision of 18 U.S.C. § 3553(f) is appropriate. A defendant has the burden of proving by a preponderance of the evidence that he is eligible for a "safety valve" reduction from the statutory mandatory minimum sentence applicable to drug trafficking cases. *United States v. Adu*, 82 F.3d 119, 123-24 (6th Cir. 1996). Under the statute, a defendant must show that he meets the following five criteria to be eligible for application of the safety valve:

> (1) the defendant does not have more than one criminal history point, as determined under the sentencing guidelines; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not the organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

9

18 U.S.C. § 3553(f).

**b.     Firearm Enhancement**

Section 2D1.1(b)(1) of the sentencing guidelines allows a criminal defendant's base offense level to be increased by 2 levels "[i]f a dangerous weapon (including a firearm) was possessed." The application notes to this section indicate that the "enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons" and provides that the "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. Manual § 2D1.1, comment, n.3. The note provides an "example" where "enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." (*Id.*)

"An enhancement under § 2D1.1(b)(1) is proper only if the government establishes, by a preponderance of the evidence that (1) the defendant possessed a dangerous weapon (2) during the commission of a drug-trafficking offense." *United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002).[2]

> Although these are two separate inquiries, in most instances they collapse into a single factual determination because the weapon was present when the arrest took place or where the crime was committed. In these instances, once the government proves a defendant was in possession of a weapon, its burden is satisfied. Once it is established that a defendant was in possession of a weapon during the commission of an offense, a presumption arises that such possession was connected to the offense. The government does not have to produce any further evidence establishing a *connection* between the weapon and the offense for § 2D1.1(b)(1) enhancement to be appropriate.

---

[2]The Sixth Circuit "has interpreted the phrase 'during the commission of a drug-trafficking offense' as referring to the period of time in which the conspiracy to traffic drugs occurred." *United States v. Tyler,* 271 Fed. App'x 505, 512 (6th Cir. 2008).

10

*United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir. 1991) (emphasis in original).[3] Thus, the requirement that the weapon be possessed "during the commission of the offense" has not been eroded by the frequency of factual circumstances which properly allow the two-step inquiry to merge into one.

Therefore, when a court states that "[i]f the government establishes that the defendant possessed a weapon, the presumption arises that the weapon was connected to the offense[,]" *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008), this statement supplies only half of the analysis in determining whether a dangerous weapon was possessed during the commission of the crime or is sufficient to describe the entire inquiry in cases where the weapon was found when the arrest took place or where the crime was committed. *Sanchez, supra*. In *Wheaton*, two witnesses had testified that the house where the gun was found had been used to conduct drug transactions, observed defendant in the home while two kilograms of cocaine were sold there, and where defendant himself admitted living at the home. *Id.* at 367. The Sixth Circuit found that these facts provided sufficient evidence to conclude that the defendant possessed the weapon. *Id.* However, the Sixth Circuit did not end the inquiry there, but also considered and held that the trial court properly concluded that the gun was related to the charged conspiracy even though no drugs were found at the home, as there was substantial evidence that the home was "tied together" to the residence where the drugs were found and both residences were associated with the drug conspiracy. *Id.* at 368.

Once the government has raised the presumption that the defendant possessed the weapon during the commission of the offense, then "[t]he defendant must then show that it was clearly

---

[3] An appeal after remand effected some portion of the opinion cited, but not any portion relevant to this analysis. *United States v. Sanchez*, 960 F.2d 610 (6th Cir. 1992).

11

improbable that the weapon was connected with the crime" to rebut that presumption. *Wheaton*, 517 F.3d at 367. "The court may consider several factors in making the determination [whether defendant has rebutted the presumption by showing it was clearly improbable that the weapon was connected with the crime]: the proximity of the firearm to the drugs, the type of firearm involved, whether the firearm was loaded, and any alternative purpose offered to explain the presence of the firearm." *United States v. Milan*, 218 Fed. App'x 492, 495-96 (6th Cir. 2007) (defendant failed to show clear improbability where he did not dispute drugs were stored and transactions took place in the home where the handgun was found and where he offered no alternative explanation for the revolver's presence) (citing *Moses, supra*.)[4] "The 'clearly improbable' standard is a higher quantum of proof than that of the 'preponderance of evidence' standard." *United States v. Bolka*, 355 F.3d 909, 914 (6th Cir. 2004).

      **c.**      **Interplay Between the Safety Valve Provision and the Firearm Enhancement**

The commingling of the section 2D1.1(b)(1) enhancement and the sections 3553(f) and 5C1.2(a) "safety valve" provision has been the subject of some conflict in the Sixth Circuit. In *United States v. Stewart*, 306 F.3d 295, 327, n.19 (6th Cir. 2002), after concluding that the defendant had not met his burden to show that the weapon found in his residence where he admitted drug transactions had occurred, the Sixth Circuit noted that the defendant had also failed to meet his burden of showing that he was entitled to a safety valve reduction in sentence. The court stated that because one of the five criteria for application of the safety valve is that defendant did not possess a firearm or other dangerous weapon in connection with the offense, other circuits

---

[4] As to alternative purpose, "[a]bsent evidence to the contrary, it is generally logical to believe that someone who fears for his life might possess a forearm to protect himself against the source of fear . . . ." *United States v. Davenport*, 220 Fed. App'x 374, 381 (6th Cir. 2007) (finding no clear improbability where defendant's fear was of "meth dealers allegedly associated with Mexican organized crime" and thus could be viewed as associated with drug trafficking).

have concluded that "where a defendant had actual or constructive possession over a firearm such that an increase to his or her base offense level under § 2D1.1 is appropriate, such possession 'defeats application of the safety valve.'" *Id.* At sentencing, the district court rejected the defendant's claim that he kept the revolver, which was loaded and under his pillow, for sentimental reasons only. The Sixth Circuit concluded that the district court did not err in finding that the defendant possessed the revolver in connection with the drug trafficking offense under section 2D1.1 nor did it err in finding that the defendant failed to show by a preponderance of evidence that he was eligible for application of the safety valve provision under section 5C1.2(2). *Id.*

In 2003, the Sixth Circuit decided *United States v. Johnson*, 344 F.3d 562 (6th Cir. 2003), in which the court held that "the district court did not commit clear error in determining that [defendant] did not meet his burden of showing that it was clearly improbable that the firearm was connected to the offense" under section 2D1.1(b)(1). *Id.* at 567. The court then summarily concluded that "[a]s we have held that the two-level enhancement applied pursuant to § 2D1.1(b)(1) was properly applied to both defendants, both are ineligible for 'safety valve' status." *Id.*

Four months later, a different panel of the Sixth Circuit decided *United States v. Bolka*, 355 F.3d 909 (6th Cir. 2004), in which the court noted that "one could reasonably construe this language [in *Johnson, supra*] as implicitly holding that the proper application of a § 2D1.1(b)(1) enhancement automatically precludes the application of a § 5C1.2(a) reduction. However, we believe that this language is better understood as being limited to the particular facts of that case." *Id.* at 913 n.5.

The court in *Bolka* also commented that some courts have read "*Stewart* to hold that conduct that warrants a § 2D1.1(b)(1) enhancement *necessarily* bars a § 5C1.2(a) 'safety valve'

13

reduction." *United States v. Bolka*, 355 F.3d 909, 912-13 (6th Cir. 2004) (and cases cited therein) (emphasis in original). However, the court in *Bolka* explained that "this interpretation of *Stewart* is unwarranted because the statement upon which that interpretation relies [the holdings of other circuits] does not expressly ratify this underlying *per se* proposition but, rather, simply recognizes its existence." *Id.* at 913. Thus, the Sixth Circuit "expressly disclaim[ed] the proposition that conduct warranting a § 2D1.1(b)(1) sentence enhancement *necessarily* forecloses the application of § 5C1.2(a) 'safety valve' reduction as this *per se* conclusion does not necessarily follow from the different evidentiary standards of §§ 2D1.1(b)(1) and § 5C1.2(a)(2)." *Id.* The Court reasoned that

> it does not deductively follow from the *presumption* that a defendant's possession of a firearm was connected to the offense – arising from a preponderance of evidence demonstrating such possession during the time of the offense – for purposes of a § 2D1.1(b)(1) enhancement that a preponderance of evidence demonstrating such a connection, in fact, exists for purposes of a § 5C1.2(a) reduction. Consequently, a defendant's conduct warranting a § 2 D1.1(b)(1) enhancement does not *per se* preclude that defendant from proving by a preponderance of the evidence that his possession of the firearm was not connected with his offense for purposes of a § 5C1.1(a) 'safety valve' reduction.

*Bolka*, 355 F.3d at 914 (emphasis in original).

In April 2005, the Sixth Circuit vacated the sentence and remanded the case of *United States v. Dixon* "for resentencing consistent with *United States v. Bolka* . . . and *United States v. Booker* . . . ." *Dixon*, 262 Fed App'x at 709 (giving procedural history of case). Four months after *Dixon*, yet another panel of the Sixth Circuit found *Johnson* to be controlling and not limited to its facts, so it rejected the reasoning in *Bolka* and declined to follow it. *See United States v. Patterson*, 145 Fed. App'x 988, 993 (6th Cir. 2005). The court relied on the "Sixth Circuit rules that one panel of this court cannot overrule the published opinion of an earlier panel." *Id.* Thus, the court in *Patterson* found the published decision of *Johnson* to be controlling on the issue and that the later

14

published decision of *Bolka* could not overrule *Johnson*.[5] *Id.* The court in *Patterson* also found that "[e]ven assuming, *arguendo*, that safety valve relief is not foreclosed by application of a firearm enhancement, the district court did not commit reversible error in denying [defendant] application of the safety valve." *Id.* at 994.

In 2008, the Sixth Circuit revisited *Dixon* after remand and affirmed the trial court's finding that the defendant had not proven that the firearm was not possessed in connection with the offense, prong two of the safety valve requisites, without citing or discussing *Patterson*.

Thus, although it is at present certainly less than clear, I am forced to conclude that the current law in this circuit is that application of a firearm (or weapon) enhancement forecloses application of the safety valve provision.

### d.    Application and Conclusion

The instant case presents the obverse of the question analyzed above: does application of "safety valve" relief foreclose firearm enhancement? I suggest that it does.

The court found that Moore had proven, by a preponderance of the evidence, that he "did not possess a firearm in connection with the offense" and thus was eligible for application of the safety valve. (*Id.* at 12.) "An enhancement under § 2D1.1(b)(1) [in this Circuit, however,] is proper only if the government establishes, by a preponderance of the evidence that (1) the defendant possessed a dangerous weapon (2) during the commission of a drug-trafficking offense." *Moses*, 289 F.3d at 850. Therefore, under the current interpretation in this circuit of the interplay of these two sentencing provisions, the court's finding under the safety valve analysis necessarily answered the ultimate question with regard to the firearm enhancement, i.e., that the firearm was

---

[5] I note that other courts have found *Bolka* to be the controlling published decision on the issue. *See, e.g., United States v. Finley*, 239 Fed. App'x 248, 253 n.3 (6th Cir. 2007).

15

not possessed during the commission of or even in connection with the offense. Therefore, under the cases discussed above, I am compelled to conclude that is that it is fatally inconsistent in this circuit to hold, as was done at Moore's sentencing, that the firearm was not possessed during the commission of the crime under the safety valve but that the firearm was possessed during the commission of the offense under the firearm enhancement.

The confusion arises, I suggest, because under this circuit's interpretation of the burden-shifting process pursuant to section 2D1.1(b)(1), which applies when the defendant possessed a weapon which was present when the arrest took place or where the crime was committed, the two inquiries (possession and connection) collapse into one. *Sanchez*, 928 F.2d at 1460. If the weapon is found on the defendant when arrested or at the crime scene, then the "during or connection to the offense" factor is less of an issue. Thus, the burden-shifting analysis provides that once the government shows actual or constructive possession by that defendant, the government does not have to produce any further evidence showing a connection between the weapon and the offense and is entitled to a presumption of connection. *Id*. The burden then shifts to the defendant to show that it is clearly improbable that the weapon is connected to the offense.

However, where, as here, the weapon is not found at the time of arrest or where the crime was committed (here Moore's place of employment), but rather during a search of his residence some four months later, the two separate inquiries (possession and connection) do not "collapse into a single factual determination" and the burden-shifting analysis is not appropriate. *Id.* The burden-shifting process is not an inquiry unto itself, but rather a means to achieve an answer to the ultimate question whether the weapon was possessed during the commission of the offense. If a court has determined, as here, that it was not, then neither was it "connected to the offense."

16

Just as application of the safety valve is inconsistent in this circuit with a finding that the firearm enhancement is appropriate, so also is the application of the firearm enhancement inconsistent with eligibility for the "safety valve," since both inquiries require a determination whether a firearm (or weapon) is possessed during or in connection with the offense. The difference in the burdens of production and proof along the way to answering the same ultimate question does not undermine the fact that both inquiries in fact answer the exact same question. This reasoning thus necessitates, I suggest, that if Moore did not possess the firearm during the commission of the crime, he is eligible for the "safety valve," but at the same time, his sentence should not have been enhanced for possession of a firearm which was not found to be possessed "in connection with" the offense.

I therefore suggest that (1) counsel was ineffective in failing to consult with Moore regarding the filing of a notice of appeal where this meritorious appellate issue exists such that a rational defendant would want to seek an appeal and (2) a misapplication of the firearm enhancement entitles Moore to resentencing.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.


                                           s/ *Charles E Binder*
                                           CHARLES E. BINDER
Dated: July 9, 2009                      United States Magistrate Judge


**CERTIFICATION**

     I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System and served on the following non-ECF participant via the United States Postal Service: James Allen Moore # 41886039, Yankton FPC, P.O. Box 700, Yankton, SD 57078.


Date:  July 9, 2009                      By      s/Patricia T. Morris
                                                   Law Clerk to Magistrate Judge Binder