29

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

F I L E D

OCT - 4 2011

CLERK'S OFFICE
DETROIT

UNITED STATES OF AMERICA            )
                                    )
                                    )  Case No. 08-cr-20060-1
v                                   )
                                    )
                                    )  Honorable Thomas L. Ludington
JAMES A. MOORE                      )

DEFENDANTS MOTION UNDER 18 U.S.C. §3582(c) PURSUANT TO THE SENTENCING
   COMMISSIONS RETROACTIVE RULING UNDER THE FAIR SENTENCING ACT

        Comes Now, James A Moore, Pro Se, the Defendant in the above
titled action and moves this Honorable Court to grant him a sentence
reduction based on the Fair Sentencing Act.
        The defendant offers the following in support of his motion:

### Title 18 U.S.C. §3582(c)(2)

        The court may modify a term of imprisonment once it has been
imposed in the case of a defendant who has been sentenced to a term
of imprisonment based on a sentencing range that has subsequently been
lowered by the Sentencing Commission pursuant to 28 U.S.C. §994(o),
upon the motion of the defendant or the Director of Bureau of Prisons,
or on its own motion, the court may reduce the term of imprisonment
after considering the factors set forth in section 3553(a) to the
extent that they are applicable, if such reduction is consistent with
applicable policy statements issued by the Sentencing Commission.

### Retroactivity

        On June 30, 2011 the Sentencing Commission voted to make the
crack guideline amendment under the Fair Sentencing Act of 2010
retroactive, allowing defendants who were sentenced prior to August
3, 2010 to apply to the court for a reduction in his/her sentence.
This amendment is to go into affect on November 1, 2011.

### History

        In 2007 the Sentencing Commission reduced the Guideline levels
for crack cocaine sentences by two base offense levels. This "Crack
Minus Two" amendment was made retroactive allowing some 20,000 plus

plus inmates eligible. Defendants who qualified and were subsequently awarded a reduction based on this change can also apply and are equally qualified to receive the latest reduction.

On June 23, 2011, a bipartisan group of legislators in the U.S. House of Representatives introduced legislation to apply retroactively the sentence reductions included in last years Fair Sentencing Act (FSA). The FSA was signed into law in August of 2010 by President Obama, and reduced the 100:1 power-crack cocaine sentencing disparity to 18:1 and eliminated the mandatory minimum sentence for simple possession of crack cocaine. This action was done under H.R. 2316.

<u>Setencing Guidelines</u>

In the Supreme Court decision <u>United States v Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court made the Sentencing Guidelines advisory and required judges to sentence defendants in accordance with 18 U.S.C. §3553(a).

Further, in <u>United States v Kimbrough</u>, 169 L. Ed. 2d 481 (2007), the Supreme Court states that over the years the Sentencing Commission has several times sought to achieve a reduction in the crack vs powder ratio under the statute and guidelines.

The Court also made clear that there would be some disparity created by the advisory Guidelines and that the judges were in the best position to determine how the §3553(a) sentencing objectives should be met in a "particular" defendants case.

Also in <u>United States v Gall,</u> 128 S. Ct. 586 (2007) the Supreme Court recognized that supervision was an appropriate punishment. The courts may now look at the fact that a term of imprisonment couples with supervision afterward may be giving defendants a sentence greater than necessary in violation of §3553(a). It should be noted that supervised relief unlike probation or parole does not replace the term of imprisonment imposed upon the defendant.

Defendants filing under this action are looking to be sentenced at the lowest end of the Guidelines. A defendant who was sentenced to a term of incarceration based on the applicable Guideline now comes to the court asking for a reduction based on the retroactive amendment to the Guidelines.

2

## Substantial Reduction Sentence

A person who provided the Government with substantial assistance and received a sentence reduction under U.S.S.G. Section 5k1.1 when they were originally sentenced is qualified to request this reduction. The court can reduce the sentence comparably lower than the new, recalculated Guideline range.

## Court Opinion

Obviously we ask that any opinion by the Court that is in favor of the defendant be considered. When it is a Chief Judge we ask that it take on a greater significance.

"Any eighth grade educated politically appointed deputy sheriff in any county can find a crack cocaine sale on any corner and make that a federal case because the U.S. Attorney brings it here because of that person's prior record. To me, that's just an enhanced county case, helping some states attorney not to do his job so that we get an enhanced  federal sentence. And I see lots of that. i was a felony judge in a large county in Peoria, (Illinois) and we saw that 19 years ago when I was in Felony Court."

" It is easy to bring in the Avon salesman from the street corner getting 25 and 50 or 100 and $200 with a black face in a black neighborhood."

In reference to a 200 kilo crack cocaine case.....

"This is big time stuff. This is a federal case. This isn't a county removal just to get a number or enhanced sentence. This is what the Sentencing Commission has in mind. This is what the federal court is for..."

Honorable Michael P. McCuskey
Chief United States District Judge
Central District of Illinois

The Courts have made it known on several occassions that there has always been a disparity in sentencing of defendants within crack cocaine cases. The courts don't have the authority to reduce a defendant below mandatory minimum but if Congress was to allow judges to adjudicate based on the person, the circumstances, and the actual

crime, many defendants would not be serving these draconian sentences due to mandatory minimums.

Because the court cannot reduce sentences below the mandatory minimums it would only make sense that the court in most cases reduces a defendants sentence to the lowest available sentence.

### Post Rehabilitation

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person

as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v United States, 518 U.S. 81, 113, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996).

Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime", Williams, 337 U.S. at 247, 69 S. Ct. 1079, 93 L. Ed. 1337; see also Pennsylvannia ex rel. Sullivan v Ashe, 302 U.S. 51, 55, 58 S. Ct. 59, 82 L. Ed. 43 (1937) "For the determination of sentences, justices generally require consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender."

In 1970, Congress codified the "longstanding principle that sentencing courts have broad discretion to consider various kinds of information" as 18 U.S.C. §3577 (1970 ed.) United States v Watts, 519 U.S. 148, 151, 117 S. Ct. 633, 136 L. Ed. 2d 554 (1997) (per curiam). Section 3577 (1970 ed)

"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." (Emphasis Added) In the Sentencing Reform Act of 1984 (SRA), 18 U.S.C. §3551 et. seq., Congress affected fundamental changes to federal sentencing by creating the Federal Sentencing Commission and introducing the Guidelines scheme, in doing so, however, Congress recodified §3577

without change at §3661. The Sentencing Commission, moreover, expressly incorporated §3661 in the Guidelines;

"In determining the sentence to impose within the Guideline range, or whether a departure from the Guidelines is warranted, the court may consider without limitation, any information concerning the background, character, and conduct of the defendant, unless otherwise prohibited by law. See 18 U.S.C. §3661. U.S.S.G. 1B1.4 (2010) (emphasis added). Both Congress and the Sentencing Commission thus expressly preserved the traditional discretion of sentencing courts to "conduct an inquiry broad in scope, largely unlimited either as to the kind of information (they) may consider, or the source from which it may come." United States v Tucker, 404 US 443, 446, 92 S. Ct. 589 30 L. Ed. 2d 592 (1972).

As cited in Jason Pepper v United States, 131 S. Ct. 1229; 179 L. Ed. 2d 196; (09-6822) (8th Cir Iowa 2009).

The commentary to U.S.S.G. §5k2.19 expresses the commission views that departures based on postsentencing rehabilitation would "(1) be inconsistent with the policies established by Congress under 18 U.S.C. §3624(b) [governing good time credit] and other statutory provisions for reducing the time to be served by an imprisoned person; and (2) inequitably benefit only those who gain the opportunity to be resentenced de novo.

As the majority in Pepper v United States points out, a sentencing statute forbids any "limitation" on the "information concerning the background, character, and conduct" that " a court...may...consider." If the Guideline policy statements absolute prohibition on consideration of postsentencing rehabilitation were legally binding, then information on that score (like information about race, religion, sex, or national origin) would fall outside the scope of this provision, for it would not be relevant.

Relevant factors in sentencing are important to the interest of justice, this includes uniformity and disparity issues that plague many circuits. Until Rita v United States, the courts witnessed sentences ranging from very low to very high areas within the Guidelines.

The trial court typically better understands the individual circumstances of particular cases before it, while the Commission has comparatively greater ability to gather information, to consider a broader national picture, to compare sentences attaching to different offenses, and ultimately to write a more coherent overall standards that reflect nationally uniform, not simply local, sentencing policies.

## Future Consideration of Pending Legislation

On June 22, 2011 Congresswoman Maxine Waters (D-Calif.) one again introduced a rewrite of her most recent legislation from 2010 called "The Major Drug Trafficking Prosecution Act of 2011" under HR 2303. This Bill, if passed would eliminate all mandatory minimum sentences for drug offenses; curb federal prosecutions of low level drug offenders; and allow courts to place offenders on probation or suspend their sentence.

The defendant seeks the benefit from any and all future legislation considerations that may become available at some point and time within his incarceration.

## Defendants §3553(a) Factors
## Of The Past

As previously stated to the court that same information should again be reviewed by the court when determining his sentence. At a glance the court needs to be refreshed on a few factors such as but not limited to; the defendant was Honorably Discharged from the United States Army after serving his country. The defendant has attended college and worked a regular job. He has demonstrated that he is a productive person and able to live in society. He has much family support not to mention two children who are dependant upon him and need him home as soon as possible.

It is the governments job to present the defendant in the most unfavorable light and just the opposite for the defendants counsel who tries to present him favorably and provide this court a reason to stand behind in sentencing him to a lower term of incarceration.

The defendant has worked hard to be able to make this argument himself.

## Defendants §3553(a) Factors
### Of The Present

The defendant has remained employed within the Bureau of Prisons showing his ability to follow the normal standards of everyday living, listening to a supervisor, and following order.

The defendant has strived to obtain as much training and education as possible while incarcerated. His accomplishments have come in two directions, health and family rehabilitation as well as educational training.

The defendant has completed the following classes:
-24 Hour Basic Electricity Course
-Exploratory In Horticulture Turf Management
-Workplace Bloodborne Pathogens
-Dental Assistance Apprenticeship
-Control of Hazardous Energy
-Personal Protective Equipment
-Commercial Housekeeping Maintenance ₁
-Commercial Housekeeping Maintenance II

In order to better himself as a father, a son, a family member, and just an overall person in general by participating in what is available to the defendant:

The defendant has completed the following classes:
-Slips, Trips, & Falls
-Drug Abuse Education Program
-Common Sense Parenting

The defendant has tried to achieve the needed goals in order for a person who is incarcerated to be released and be able to function in society as a normal citizen. His desire to better himself is in efforts to avoid recidivism which haunts many released inmates.

## Background

The defendant was convicted for crack cocaine along with a two point enhancement for a weapon which was ultimately dropped reducing the defendants points from 29 to 27. This reduced to the defendants sentence to 70 months.

The defendant was charged February 20, 2008 with 2 counts of distribution of 5 grams or more of cocaine under 21 U.S.C. §841(a)(1) which took place on or about October 22, 2007 and distribution of cocaine base on or about October 31, 2007.

The defendant pled guilty on May 16, 2008 and was sentenced on August 26, 2008.

## New Guideline Sentence Request

Today the defendant has a new Guideline range based on the 18:1 Ratio which reduces his level by two points again. In doing so the defendants range is now 57 to 71 months. If the court follows suit as it has repeatedly done he would be sentenced to the lower end of Guideline equalling 57 months.

Any reduction of time is always welcomed and appreciated by the defendant and as the cliche goes, don't look a gift horse in the mouth. Since the recent decision by the U.S. Supreme Court in Pepper v United States, the courts now have the opportunity to look at the whole picture for each defendant when they have a vehicle to come back into court with. The defendant has that vehicle and within it he is now able to show the court that the time between his original charge and today, the defendant has matured, he has grown into the person society can appreciate.

The defendant has shown his latest §3553(a) factors of his many accomplishments since being sentenced the first time. If prison has a meaning it is rehabilitation and the defendant within has demonstrated the positive affects of a court sentencing a defendant to a period of incarceration.

At the time of handing down a sentence it is the courts duty to sentence a defendant to a period of time that shows not only

respect for the law but for what is in the best interest of the defendant and society. When resentencing a defendant the court now has the ability to look at the defendant in a whole new light and can consider all factors when sentencing this person again.

Someone who deserved a higher sentence at the time of their original sentence may have deserved much less a year later, and now some three plus years later the defendant has shown he deserves much less through his own rehabilitation efforts.

The defendant through his calculations based on the Sentencing Guidelines, he is now qualified to be placed at 57 months. Based on this calculation the defendant respectfully requests that this Honorable Court sentences him at this term.

Further, the defendant respectfully requests that this Honorable Court look upon him not as the person he was when he committed the crime, but the person who he is today.


Respectfully submitted,

James A. Moore, Pro Se
Defendant



JAMES A. MOORE 41886-039 K-3
FCI Sandstone
P.O. Box 1000
Sandstone, MN. 55072

U.S. DEPARTMEN
Federal Bureau of Pr

Inmate's Name
Register No.

41886-039
MOORE       K3
VEG PREP
S/S

Evaluation Period:   26 Aug. thru 25 Sept. 2011

**WORK PERFORMANCE RATING**

Work Assignment: _____

Bonus Justification: _____

Dept. Head Approval: _____

To Dept. Head for Review, Then to Unit Team

Circle the best statement in each area. Base your rating on the inmate's overall performance for the rating period – neither the inmate's best day nor worst day – as compared to what is expected of a satisfactory worker in the assignment.

**A.   QUALITY OF WORK**
1.   Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
2.   Fair. Careless; makes mistakes and does not check work. Should do better work.
3.   Satisfactory. Makes some mistakes but no more than expected at this level.
4.   Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
5.   Outstanding. Does superior work.

**B.   QUANTITY OF WORK**
1.   Unsatisfactory. Lazy, wastes time, goofs of.
2.   Fair. Does just enough to get by. Has to be prodded occasionally.
3.   Satisfactory. Works steadily but does not push self.
4.   Good. Willing worker. Does a full day's work and wastes little time.
5.   Outstanding. Drives self exceptionally hard all the time.

**C.   INITIATIVE**
1.   Unsatisfactory. Always waits to be told what to do. Needs help getting started.
2.   Fair. Usually relies on others to say what needs to be done.
3.   Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
4.   Good. Can plan own work well. Acts on own in most things. Doesn't wait to be told what to do.
5.   Outstanding. Has good ideas on better ways of doing things.

**D.   INTEREST; EAGERNESS TO LEARN**
1.   Poor. Shows no interest in job. Regards job as a drag or waste of time.
2.   Fair. Shows minimal interest but not very eager to learn.
3.   Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
4.   Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve own skills.
5.   Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E.   ABILITY TO LEARN**
1.   Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn, no matter how hard trying.
2.   Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
3.   Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
4.   Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
5.   Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F.   NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
1.   Needs constant supervision. If left unsupervised will foul up, g in trouble, or wander off. Undependable
2.   Needs closer supervision than most. Not very dependable.
3.   Average. Can be relied on for certain things but must be supervised by others. Usually prompt and dependable.
4.   Needs little supervision. Good record of dependability and promptness.
5.   No supervision required. Completely dependable in all things.

**G.   RESPONSE TO SUPERVISION AND INSTRUCTION**
1.   Poor. Resentful and hostile. May argue with supervisor.
2.   Fair. Resists or ignores suggestions.
3.   Satisfactory. Generally does what is told without any fuss.
4.   Good. No hostility or resentment. Tries to improve.
5.   Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H.   ABILITY TO WORK WITH OTHERS**
1.   Poor. Negativistic, hostile, annoying to others.
2.   Fair. Doesn't make friends easily. Has some interpersonal difficulties.
3.   Satisfactory. Gets along OK with most co-workers and is accepted by them.
4.   Good. Friendly, congenial, helpful; others like to work with.
5.   Outstanding. Gets along well with everyone. Very popular.

**I.   OVERALL JOB PROFICIENCY**
Based on this inmate's overall performance during this work period, if this inmate was an employee of yours in the community would you:
1.   Fire or lay off that individual?
2.   Transfer the person to a less demanding job at a lower pay scale?
3.   Continue to employ the person but without a raise or promotion this time?
4.   Raise the person's pay but keep the person at the same job?
5.   Promote the person to a more demanding job at a higher pay rate?

**J.   GRADES AND PAY**
1.   Performance Pay – Grade Class (Circle one) 1 – 2 – 3 – 4 – M
2.   Hours of Satisfactory Work _____
3.   Regular Pay _____
4.   Bonus Recommended: ___ yes; ___ no
5.   Total Pay _____

_____
(Supervisor's Signature)                    9-29-2011
                                            (Date)

_____
(Inmate's Signature)                         (Date)

Inmate _____ was requested to sing this rating form, but refused, citing the following reason: _____

_____
_____

_____
(Staff Witness' Signature)

_____
(Date)

# CERTIFICATE OF COMPLETION

FEDERAL BUREAU OF PRISONS

FREEDOM FROM DRUGS
DRUG ABUSE EDUCATION

FEDERAL PRISON CAMP
YANKTON, SOUTH DAKOTA 57078

THIS IS TO CERTIFY THAT

## JAMES MOORE  41886-039

HAS SUCCESSFULLY COMPLETED AND FULFILLED THE REQUIREMENTS
OF THE DRUG ABUSE EDUCATION PROGRAM, AND IS HEREBY
AWARDED THIS CERTIFICATE ON THIS
22ND  DAY OF JUNE, 2010.

_____
DRUG ABUSE PROGRAM ADMINISTRATOR

_____
FACILITATOR

*Certificate of Completion*

**James Moore**

# Common Sense PARENTING ®

BOYS TOWN ℠
Saving Children Healing Families

This **6th** day of **April** 20**10**

*Parent Trainer*

(W=LA)

# CERTIFICATE OF TRAINING

### THIS IS TO CERTIFY THAT

JAMES MOORE
(NAME OF EMPLOYEE)

HAS SUCCESSFULLY COMPLETED THE TRAINING PROGRAM

# Slips, Trips and Falls

### TRAINING WAS COMPLETED ON

SEPTEMBER 23, 2010
(DATE)

### TRAINING WAS CONDUCTED BY

ALAN HAATAJA
(NAME OF INSTRUCTOR)



CERTIFIED BY
(SIGNATURE OF INSTRUCTOR)



www.osha-safety-training.net



# Certificate of Completion

2009

This certifies that

*James Moore*

has successfully completed the

## 24 Hour Basic Electricity Course

At FPC Yankton

JANUARY 05-APRIL 20, 2009

Joseph Hoffman, Apprenticeship Coordinator

# Certificate of Achievement

## This certifies that

**James Moore**

## has satisfactorily completed

**Exploratory in Horticulture
Turf Management**

### Consisting of ___87___ Hours of Training

**This certificate is hereby issued this ___31st___ day of ___August___, 20 09**



J.D. Hoffman, Horticulture Instructor



M.M. Steffen, Supervisor of Education

# HORTICULTURE PROGRAM
## COMPLETION TRANSCRIPT
### F.P.C. YANKTON

Student's Name: ___MOORE, JAMES_____     SSN: _____

| Course | Grade | Hours | Date Completed |
|--------|-------|-------|----------------|
|  | A | | AUG/09 |
| **Turf Management** | — | | _____ |
|     disease and insects | | 20 | |
|     identification | | 17 | |
|     establishment | | 30 | |
|     maintenance | | 20 | |
| | | | |
| **Introductory Horticulture** | — | | _____ |
|     plant science and propagation | | — | |
|     greenhouse manag't, crops, & containers | | — | |
|     integrated pest management | | — | |
|     using landscape plants | | — | |
|     small fruit & vegetable garden | | — | |
| | | | |
| **Herbaceous Plants** | — | | _____ |
|     house plants | | — | |
|     annuals | | — | |
|     biennials | | — | |
|     perennials | | — | |
|     bulbs | | — | |
| | | | |
| **Woody Landscapes, Morphology** | — | | _____ |
|     morphology | | — | |
|     identification | | — | |
| | | | |
| **Greenhouse Operations** | — | | _____ |
|     greenhouse structures | | — | |
|     growth and propagation | | — | |
|     crops | | — | |
| | | | |
| **Landscape Design** | — | | _____ |
|     introduction drawing | | — | |
|     residential drawing | | — | |
|     commercial drawing | | — | |
| | | | |
| **Pruning Techniques Workshop** | — | | _____ |
|     tools of the trade | | — | |
|     plant response to pruning | | — | |
|     deciduous trees, shrub, and vines | | — | |
|     evergreen trees, shrubs | | — | |
|     herbaceous & houseplants | | — | |
|     specialized pruning techniques | | — | |
| | | | |
| **Internship** | — | | _____ |

Total Hours     87

Horticulture Instructor  _____
                             J. D. Hoffman

Education Supervisor  _____
                             M. M. Steffen

# CERTIFICATE OF TRAINING

THIS IS TO CERTIFY THAT

## *JAMES MOORE*

(NAME OF EMPLOYEE)

HAS SUCCESSFULLY COMPLETED THE TRAINING PROGRAM

# WORKPLACE BLOODBORNE PATHOGENS

TRAINING WAS COMPLETED ON

## MARCH 31, 2010

(DATE)

TRAINING WAS CONDUCTED BY

## C. McKEE, RN (YAN)

(NAME OF INSTRUCTOR)

CERTIFIED BY



(SIGNATURE OF INSTRUCTOR)



www.osha-safety-training.net

# U.S. Department of Labor



Office of Apprenticeship
304 E. Broadway Ave. # 332
Bismarck, ND 58501-5900

September 8, 2010

Dear James,

Congratulations on the completion of your Dental Assistant apprenticeship program.

The attached certificate confirms that you have successfully completed all the training requirements and your peers recognize you as having acquired the necessary skills to perform at the journey level.

To be successful in the modern world, the upgrading of your skills must be a continual process. The completion of your apprenticeship program is only the beginning of your Life Long skills acquisition. Take the next step now to secure your career and a prosperous future.

Your apprenticeship records and successful completion of your apprenticeship have been recorded on the National Apprenticeship System's computer data files. If for some reason your certificate is lost or misplaced, it can be reissued by this office.

Again, congratulations and best wishes in your career.
Sincerely,

Barry Dutton, South Dakota State Director
Office of Apprenticeship

# The United States Department of Labor

## Office of Apprenticeship

### Certificate of Completion of Apprenticeship

*This is to certify that*

**James Allen Moore**

*has completed an apprenticeship for the occupation*

**Dental Assistant**

*under the sponsorship of*

**FPC Yankton**

*in accordance with the basic standards of apprenticeship*

*established by the Secretary of Labor*

*Secretary of Labor*

*Administrator, Office of Apprenticeship*

*Date Completed* June 25, 2010

# CERTIFICATE OF TRAINING

THIS IS TO CERTIFY THAT

__JAMES MOORE__
(NAME OF EMPLOYEE)

HAS SUCCESSFULLY COMPLETED THE TRAINING PROGRAM

## Lockout/Tagout
## Control of Hazardous Energy

TRAINING WAS COMPLETED ON

__August 13, 2010__
(DATE)

TRAINING WAS CONDUCTED BY

__Alan Haataja__
(NAME OF INSTRUCTOR)

CERTIFIED BY
(SIGNATURE OF INSTRUCTOR)



NATIONAL safety
C O M P L I A N C E
www.osha-safety-training.net

# CERTIFICATE OF TRAINING

THIS IS TO CERTIFY THAT

JAMES MOORE
(NAME OF EMPLOYEE)

HAS SUCCESSFULLY COMPLETED THE TRAINING PROGRAM

# Personal Protective Equipment

TRAINING WAS COMPLETED ON

SEPTEMBER 23, 2010
(DATE)

TRAINING WAS CONDUCTED BY

ALAN HAATAJA
(NAME OF INSTRUCTOR)



CERTIFIED BY

_(SIGNATURE OF INSTRUCTOR)_




NATIONAL safety
COMPLIANCE
www.osha-safety-training.net

# Howard College

"Education ...For Earning, For Life!"

## CERTIFICATE OF COMPLETION

Commercial Truck Driver Science I

_____
Instructor

CEU: 12.0
Date: February 16, 2011

# Howard College

"Education ...Fe... For Earning, For Life!

## CERTIFICATE OF COMPLETION

This is to Certify that

has successfully completed

### Commercial Housekeeping ...nce II

CEU: 12.0
Date: March 24, 2011

_Instructor_

August 16, 2011

Judge Ludington,

I'm writing to you on behalf of James Moore. I have known James for about 7 years; he has really been a wonderful person to come in contact with. He has really been a special friend to me. He is a very out going person, he loves to be apart of something, always busy trying to make a statement, trying to improve where he lives, and do things for the community. I feel it will be so important for him to return to society to get his life back and of course to get a chance to prove that a person can change their life, and do positive things. He has such good ideals for making his community a better place to live, he has talked about going back to school and how he has talked about trying to talk with young kids, and trying to take them down the right track, so being a motivational speaker to me would be great, cause he has been down this road, and he can help someone else not to go that way. These young men need someone to tell them that. He is a good family man; I know he loves his family very much, I have been around him and his mother and his kids and his grandmother, he loves and cherish them very much, and they really miss him, I talk with his mom all the time. James is her only

child so I know he really miss her and I know he will be so happy to be back in her arms again. I know people make mistakes in life, but we all need a chance to prove that we have learned from our mistakes. And I know that James has learned from the wrong he has done, and he needs to make it right by returning to society to prove a good person is still there inside of him, Thank you.

**Name: Demetria Blakely**

*Demetria Blakely*

**Occupation: Automotive worker for TRW, formally Delphi**

**Phone: 1-989-607-8728**

Shatoya Likely
1817 Madison Ave SE
Grand Rapids, MI 49507
616-452-5117
616-724-0138
Sglikely@aol.com


August 31, 2011


James A. Moore # 41886-039
FCI Sandstone- K3
Federal Correctional Institution
PO Box 1000
Sandstone, MN 55072


Dear Judge Ludington,

I have had the pleasure of knowing James Allen Moore for 10 years. During the years of our friendship, I have known James in many different ways. He has been Officiated basketball games with me and he has mentored youth inside and outside of the school.

James is in short a good person. He has always been kind and generous with others. He is an intelligent, dedicated and personable man. He is quick on his feet with making decisions regarding today's youth. He is a Father and his children need him home so he can be a positive role model for them.

If I can be of any further assistance, or provide you with any further information, please do not hesitate to contact me.  I hope shows what type of person James is and what he means to the people around him.

Sincerely,

Shatoya G Likely
Grand Rapids Public School- Ottawa Hills HS
Youth Advocate

September 1, 2011

Dear Judge Thomas Ludington

This letter is concerning my son James Allen Moore 41886-039 who is an inmate at FCI Sandstone in Sandstone, Mn. I am writing you in hope that you would consider my son for the new Crack Law that was passed. He is very much needed at home with his family and has been incarcerated for the last four years he has completed a number of trainings and I feel he has learn his lesson for what he has done in the past. James is needed to help raising his two children and to assist me with caring for his grandmother who is 81 years old. I care for her now but it would help me if he was home to assist me. I am in remission with Cancer and I try to stay stress free so it will not return I have been doing well with it. I asking that you would please consider my son for this program. James has change and I feel like he has growth a lot from being away from the family. Before his incarceration he was a Business Owner and was employed at ABC Warehouse and Self- Service Lumber. He also help raise funds for Houghton Elementary School Basketball team uniform and a number of Food Drives for the school and gave a pizza party for the classes which collected the most cans of food. I feel that he has been rehabilitated and if allowed to return home he can be a productive citizen in the community. Once again I am asking for you to please consider my son for the early release.

Thanking you in advance

Brenda F. Moore

# CERTIFICATE OF SERVICE

I, _James A. Moore_____ _____ hereby certify that i have served a true and correct copy of the following:

DEFENDANTS MOTION UNDER 18 U.S.C. §3582(c) PURSUANT
TO THE SENTENCING COMMISSIONS RETROACTIVE RULING UNDER
THE FAIR SENTENCING ACT

**Which is deemed filed at the time it was delivered to prison authorities for forwarding,** _Houston v. Lack_, 101 L.Ed 2d 245 (1988), upon the defendant/defendants and or his/their attorney/attorneys of record, by placing same in a sealed, postage prepaid envelope addressed to:

and deposited same in the United States Mail at the Federal Correctional Institution, Sandstone, Minnesota.

I **declare**, under penalty of perjury (Title 28 U.S.C. §1746), that the foregoing is true and correct.

Dated this October day of _29th_____, _2011_ .

_James A. Moore  41886-039_
P.O. Box 1000          K-3
Sandstone, MN 55072



<41886-039<>
United Statesdistrictcourt
PO BOX 913Rm168-240-214
1000 Washington Ave
BAY CITY, MI 48707
United States

Federal Correctional Institution
P.O. Box 1,000
Sandstone, MN 55072

FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 1000, SANDSTONE, MN 55072

DATE: 01-30-11

The enclosed letter was processed through special mailing
procedures for forwarding to you. The letter has neither
been opened nor inspected. If the writer raises a question
or problem over which this facility has jurisdiction, you
wish to return the material for further information or
clarification. If the writer encloses correspondence for
forwarding to another addressee, please return the enclosure
to the above address.